## ARTEMAS BRYANT *vs.* LUTHER CLIFFORD.

A. furnished B. with upper leather to be made into boots, under a parol agreement between them, that the leather should remain A.'s until paid for: B. made boots, and for a while sent them to New York, to be sold by a commission merchant, who made acceptances for B. alone, and made remittances to B. alone: A parcel of boots, afterwards made by B. from upper leather so furnished by A., were attached as B.'s property, and were subsequently sold as such, on execution, by the attaching officer. *Held,* that A. was either the owner of the whole property in the boots, or was owner in common with B., and might, on either ground, maintain an action of trover against the officer for a conversion by the sale on execution

TROVER for one hundred and twenty pairs of boots, attached by the defendant, a deputy sheriff, as the property of Phinehas Brooks. At the trial in the court of common pleas, before *Washburn,* J. it was admitted that the boots were in the possession of said Brooks when they were attached, and that they were afterwards sold by the defendant, on an execution against Brooks.

The plaintiff called Brooks as a witness; and he testified that he manufactured the boots, and that the upper leather in them was furnished by the plaintiff, who was a tanner, under a parol contract that he would furnish it for boots to be made by him, (Brooks,) and that it should remain the plaintiff's until paid for; that the plaintiff never furnished him with sole leather, but had authorized him to exchange the upper leather, so furnished, for sole leather ; that he had never made such exchange, but had exchanged boots, made from the plaintiff's upper leather, for sole leather, and having worked that sole leather, thus obtained, and the plaintiff's upper leather, into boots, again exchanged a portion of them for sole leather, and so did successively, for five or six times. His testimony tended to show that when boots were made by him, he sent them to a commission merchant in New York, where they were sold on his account, and that all acceptances and remittances were to him ; that there was no application of particular funds to the payment of the plaintiff for leather in the specific boots from which the funds arose; that he, (Brooks,) during the time, purchased upper leather of one Clark, under a similar contract, and of others unconditionally, and that boots, made from the same, were sent by him to New York, and were sold in the same way, but were kept distinct from those made from leather furnished by the plaintiff, by means of marks understood by the witness; that the boots now in question, when attached, were in boxes, ready to be transported to New York; that they were made from upper leather furnished by the plaintiff; that they were of the value of $1·75 a pair, of which the upper leather was worth sixty cents, and the sole leather from thirty to thirty four cents.

The witness exhibited several bills of leather furnished by the plaintiff, which were in this form : " P. Brooks bought of A. Bryant seventeen [or some other number] sides, to be his when paid for."

The defendant's counsel requested the court to instruct the jury, that if Brooks had as much right to the possession of the property as the plaintiff, then the plaintiff could not recover; and that, in order to recover, the plaintiff should have had a paramount right to possession at any time, without or against the will of Brooks. But the court instructed the jury, that the plaintiff, in order to recover, must have the right of property and the right to the immediate possession of the boots; that if the property in the stock was in the plaintiff, and if there was no agreement between him and Brooks, whereby Brooks had a right to hold possession against the plaintiff, the fact, that the leather was in Brooks's actual possession, was not a valid objection to the plaintiff's right to recover in this action, as the right of property would, in the absence of an agreement to the contrary, draw to it the right of possession.

The defendant's counsel contended, that if any part of the sole leather of the boots belonged to Brooks, the plaintiff could not recover in this action, either, *first,* because the property of Brooks and the plaintiff was so mingled as not to be distinguishable and separable, or *secondly,* because Brooks and the plaintiff were tenants in common, and the defendant was not liable by reason of having attached the boots as the property of Brooks. But the court instructed the jury, that if the contract above stated was *bona fide,* and the upper leather of the boots, under that contract, belonged to the plaintiff, and if the upper leather constituted the principal part of the boots, so that the sole leather and the work put into them were the incidents to such principal part, then the plaintiff was entitled to recover the value of the upper leather, if converted by the defendant, and also the value of the plaintiff's interest, if any, in the sole leather of which they were made.

The jury found a verdict for the plaintiff, and the defendant filed exceptions to the rulings and instructions of the court.

*W. A. Bryant,* for the defendant. Brooks and the plaintiff were tenants in common; *Beaumont* v. *Crane,* 14 Mass. 400 ; and one tenant in common cannot recover for conversion of the common property. *Walker* v. *Fitts,* 24 Pick. 194. In the case of *Stevens* v. *Briggs,* 5 Pick. 177, the desk, for which the plaintiff recovered, was made *for him.* And in *Dresser Manuf. Co.* v. *Waterston,* 3 Met. 9, the plaintiffs had a *special control* of the goods for the conversion of which they maintained their action. See also *Barrett* v. *Pritchard,* 2 Pick. 512.

The first instruction, which the defendant requested, was in the words of the court in *Muggridge* v. *Eveleth,* 9 Met. 237, viz. "the right of possession of one must be paramount," in order to entitle him to maintain an action alone. The present case is distinguishable from all that the plaintiff will rely on, inasmuch as the property, possession, control and right to sell, all passed to Brooks.

The plaintiff never stated, before the trial, what part he claimed, as he ought to have done; but he demanded the whole property. Besides; there was an intermixture of property, so that the plaintiff should have pointed out his portion or part.

The plaintiff's remedy, if any, was under the Rev. Sts. *c.* 90, §§ 73, 74, by an appraisement and delivery to him, on his giving bond. The case of *Melville* v. *Brown,* 15 Mass. 82, which will be cited for the plaintiff, was decided before the revised statutes had provided the above mentioned remedy ; and the officer there knew that he was attaching property owned in part only by the debtor.

*N. Wood,* for the plaintiff. Paramount right to possession is not necessary to entitle a party to maintain trover; certainly not, in the case of a joint owner. The right to immediate possession is the test. The instruction, on this point, was sufficiently favorable to the defendant. The plaintiff had not given up the right of possession. 2 Saund. 47 *a.* *Weld* v. *Oliver,* 21 Pick. 559. *Walcot* v. *Pomeroy,* 2 Pick. 121 *Stevens* v. *Briggs,* 5 Pick. 177.

The sole leather was *not sold* to Brooks, as the bills rendered to him show.

The last instruction was also sufficiently favorable to the defendant. *Glover* v. *Austin,* 6 Pick. 209. *Reed* v. *Upton,* 10 Pick. 522. *Marston* v. *Baldwin,* 17 Mass. 606. *Babcock* v. *Gill,* 10 Johns. 287.

There was no more intermixture in this case than in *Stevens* v. *Briggs,* 5 Pick. 177, and *Eaton* v. *Lynde,* 15 Mass. 242, and *Dresser Manuf. Co.* v. *Waterston,* 3 Met. 9. On this point, the plaintiff relies on *Ryder* v. *Hathaway,* 21 Pick. 298.

If Brooks and the plaintiff were tenants in common, yet this action lies, as the defendant sold the whole property. *Melville* v. *Brown,* 15 Mass. 82. *Reed* v. *Howard,* 2 Met. 36.

WILDE, J. Several exceptions were taken to the rulings of the court of common pleas, none of which appear to us to be well founded. Whether the plaintiff was the sole owner of the boots alleged to have been converted by the defendant, or whether he owned them in common with Brooks, from whose possession they were taken by the defendant, is a question not raised by the exceptions; for if they were owned in common, the rulings of the court and the instructions to the jury were sufficiently favorable to the defendant. It is true that the defendant was authorized to attach and take possession of the property ; but he had no right to sell the whole property on execution. This subsequent abuse of his authority made him a trespasser *ab initio,* as was decided in *Melville* v. *Brown,* 15 Mass. 82. The defendant could not justify his proceedings on the ground that the plaintiff's property was so mingled with Brooks's, that it was impossible to distinguish what belonged to the plaintiff. The doctrine laid down by the court, in *Ryder* v. *Hathaway,* 21 Pick. 298, 305, is decisive on this point.

It is clear, from the evidence reported, that the plaintiff was either the owner of the whole property taken, or was owner in common with Brooks ; and in the latter case, it is clear that the defendant had no right to sell the plaintiff's share, and that the sale was a tortious act amounting to a conversion. *Exceptions overruled.*